10 F.3d 808
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Oscar B. DE VERA, Petitioner,
v.
IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 92-70297.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 5, 1993.
Decided Nov. 15, 1993.
 
 Before: SCHROEDER, FLETCHER and ALARCON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Oscar De Vera petitions for review of the Board of Immigration Appeals' ("BIA") finding of deportability based on his wilful misrepresentation of a material fact at entry. 8 U.S.C. Sec. 1251(a)(1); 8 U.S.C. Sec. 1182(a)(19). De Vera contends that there is not reasonable, substantial, and probative evidence in the record as a whole to support the Board's decision that he wilfully misrepresented in his application for immigration visa and alien registration that he was single and had never been married. Because the BIA erred as a matter of law in ruling that De Vera was required to prove through official records that the March 19, 1979 marriage is invalid in order to demonstrate that his representation of his marital status was not a wilful misrepresentation, we must reverse and remand the BIA's order dismissing the appeal of the Immigration Judge's ("IJ") deportation order.
 
 
 3
 De Vera also contends that the BIA abused its discretion in denying waiver of deportation under 8 U.S.C. Sec. 1251(f)(1) and suspension of deportation under 8 U.S.C. Sec. 1254(a)(1). Because we have reversed the order of deportation, we do not reach the merits of these contentions in this appeal.
 
 I.
 
 4
 In this petition, De Vera argues that "the agreement embodied in the marriage contract of March 19, 1979, could not constitute a valid marriage, even if the parties had intended it to, which they did not, because such a marriage would be void ab initio because it lacks the requisite formalities, specifically, no marriage license was issued for this agreement." Appellant's Brief at 4. De Vera also argues in his brief filed in this court that "[i]t is irrelevant what Mr. De Vera and Illuminada intended when they signed this marriage contract, and equally irrelevant if, when or by whom this contract was registered." Id. Accordingly, the issue as framed by De Vera is whether the BIA's finding that a marriage license was issued is supported by the record. De Vera asserts that because the record shows that no marriage license was obtained, he did not misrepresent his marital status to the INS in his entry application. In determining whether the evidence is sufficient to support a decision that an alien is deportable, our review is limited to whether the findings are supported by "reasonable, substantial, and probative evidence on the record considered as a whole ...;" 8 U.S.C. Sec. 1105a(4).
 
 II.
 
 5
 The INS introduced a marriage contract dated March 19, 1979 as proof that De Vera was married at the time he stated that he was single on his application for an immigration visa. The marriage contract dated March 19, 1979 reads as follows:
 
 
 6
 THIS IS TO CERTIFY: That I, Oscar B. De Vera [and I] Ma. Illuminada dela Cruz on the date and at the place above given, of our free will and accord, and in the presence of the person solemnizing this marriage and of the two witnesses named below, both of age, take each other as husband and wife.
 
 
 7
 And I, Delfin D. Rosario Municipal Judge CERTIFY: That on the date and at the place above written the aforesaid Oscar B. De Vera and Ma. Illuminada dela Cruz were with their mutual consent lawfully joined together in holy matrimony by me in the presence of said witnesses both of age; and I further certify that the Marriage License No. 5589587 issued at Molasiqui, March 19, 1979 in favor of said parties, was exhibited to me....
 
 
 8
 The marriage contract was signed by Judge Delfin D. Rosario, Municipal Judge, De Vera, Ma. Illuminada dela Cruz, and two witnesses.
 
 
 9
 Contrary to De Vera's contention, the marriage contract certified by Judge Rosario recites that a marriage license was issued prior to the ceremony conducted by Judge Rosario. De Vera does not challenge this factual recitation on the ground that it is hearsay, or that the document was not properly authenticated. We note that facts recited in a record of a marriage are not excluded by the hearsay rule "if the report thereof was made to a public office pursuant to requirements of law." Fed.R.Evid. 803.
 
 
 10
 The administrative record in this matter shows that the marriage contract was registered in the Central Registry Office in Manila. We are persuaded that the INS met its initial burden of presenting evidence that a marriage license was issued prior to the March 19, 1979 ceremony. This conclusion does not, however, end our review.
 
 
 11
 De Vera attempted to meet his burden of going forward with the evidence to demonstrate that he did not enter into a valid marriage. He offered the affidavit of Judge Rosario in an attempt to prove that no valid marriage was entered into on March 19, 1979. In his affidavit, Judge Rosario alleges that he informed De Vera and Miss dela Cruz that "the said Marriage Contract is not legally a contract of marriage as the requisite solemnities of a marriage ceremony is [sic] wanting for they merely signed the said Marriage Contract without me asking them if they accept each as husband and wife."
 
 
 12
 In addition, De Vera offered the notarized certification of an official of the Civil Registrar's Office of San Carlos City. The certification recites that no marriage license was issued to De Vera or Miss dela Cruz between the years 1978 to 1980. De Vera also offered a certification signed by the civil registrar of Malasiqui, Pangansinan. This official asserted that the marriage registry of his office did not show that De Vera was married to Miss dela Cruz in 1979. The IJ refused to consider this evidence.
 
 
 13
 The IJ interrupted the presentation of defense testimony and ruled, without waiting to hear final argument from counsel, that the presumption of validity of the certified copy of the March 19, 1979 marriage contract "cannot be rebutted" by affidavits. The IJ stated: "And you can do all the .. submit all the band-aides [sic] you want, but the fact of the marriage, as I see it, has been established by Exhibit 5, which is a certified and authenticated copy [of the March 19, 1979 marriage contract]."
 
 
 14
 The BIA also ruled that it would "not accept [Judge Rosario's] affidavit to establish the lack of validity of the marriage contract when official records should be available." No authority was cited by the BIA to support this ruling. The INS has not attempted to defend the refusal of the BIA and the IJ to consider this evidence offered by De Vera, or their legal conclusion that the validity of the marriage could not be rebutted other than by official records.
 
 
 15
 The only clue as to the type of evidence that the IJ and the BIA would require to prove the nonexistence of a valid marriage is contained in the IJ's observation that De Vera had failed to have the 1979 marriage declared null and void in a court in the Philippines. The IJ's comment demonstrates that he focused on the wrong question. To demonstrate deportability, the INS was required to prove by clear, unequivocal, and convincing evidence that De Vera wilfully misrepresented his marital status in his application for an immigrant visa and alien registration. Proof that a license was issued prior to the 1979 ceremony does not conclusively prove that the subsequent ceremony was performed in accordance with the requirements of Philippine law or that De Vera misrepresented his belief that he was not married because the March 19, 1979 was only an engagement commitment and not a valid marriage.
 
 
 16
 Judge Rosario's affidavit, if believed, tends to prove that De Vera was told on March 19, 1979, by the person who officiated at the ceremony, that it would not result in a valid marriage agreement. The evidence that no marriage was registered in Malasiqui, Pangansinan, and that no license was issued to De Vera in San Carlos City in 1979, would tend to corroborate De Vera's testimony that he believed that he was entering into an engagement agreement, and not a marriage contract. The IJ erred as a matter of law in ruling that De Vera could not demonstrate the invalidity of the marriage through the testimony of percipient witnesses, or by proof that official records did not disclose that a license was issued. This evidence, if credible, would support an inference that De Vera did not wilfully misrepresent his belief that he was an unmarried person when he filled out his immigration application. Moreover, even if the marriage ceremony would withstand an attempt to have it declared void in a Philippine domestic relations court because a license was issued, such proof would not demonstrate that De Vera wilfully misrepresented his belief, albeit mistaken, that he had not entered into a valid marriage on March 19, 1979.
 
 III.
 
 17
 Because the IJ excluded relevant evidence under the mistaken notion that it was inadmissible, we must reverse the decision of the BIA, and remand for an evidentiary hearing. Upon remand, the IJ is directed to consider Judge Rosario's affidavit and the evidence that there is no record that a license was obtained in San Carlos City, or that it was registered in Malasiqui, Pangansinan. In addition, De Vera should be permitted to testify as to his state of mind concerning his marital status when he filled out his application for an immigration visa. Furthermore, the IJ should consider any other relevant evidence on this question, including but not limited to, the evidence that De Vera returned to the Philippines to participate in a marriage ceremony that was duly registered, at a time when he was not under threat of deportation, and that, after a seemly time, a child was born. We express no view as to the weight to be given to the evidence upon remand or whether any of it is credible.
 
 
 18
 The IJ and the BIA are further directed to make express findings regarding whether De Vera wilfully misrepresented his marital status on his immigration application, the credibility of the witnesses offered by the parties, and a statement of the basis for the grant or denial of the INS' request that De Vera be deported. Any further appeal in this matter will be heard by this panel.
 
 
 19
 REVERSED and REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3